# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CHOCOLATE | : | **MDL DOCKET NO. 1935** |
| **CONFECTIONARY ANTITRUST** | : | **(Civil Action No. 1:08-MDL-1935)** |
| **LITIGATION** | : | |
| | : | **(Judge Conner)** |
| | : | |
| **THIS DOCUMENT APPLIES TO:** | : | |
| | : | |
| **ALL CASES** | : | |

## CASE MANAGEMENT ORDER NO. 8
## RE:  PRESERVATION AND PRODUCTION OF
## DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

AND NOW, this 27th day of January, 2009, upon consideration of the joint proposed stipulation (Doc. 573) for the preservation and production of documents and electronically stored information, and of the joint stipulation (Doc. 574) regarding an exception to the same, it is hereby ORDERED that the proposed stipulation (Doc. 573) and exception (Doc. 574) are ADOPTED in their entirety (as attached hereto) and shall constitute an order of the court.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION | : **MDL DOCKET NO. 1935**<br>: **(Civil Action No. 1:08-MDL-1935**<br>:<br>: **(Judge Conner)**<br>: |
| THIS DOCUMENT APPLIES TO: ALL CASES | : **FINAL STIPULATION AND**<br>: **[PROPOSED] ORDER FOR THE**<br>: **PRESERVATION AND**<br>: **PRODUCTION OF DOCUMENTS**<br>: **AND ELECTRONICALLY STORED**<br>: **INFORMATION** |

The Parties (as defined below) stipulated and agreed to a proposed order for the preservation and production of documents and electronically stored information ("ESI"). The Court, having reviewed the Parties' stipulated proposed order, adopts the Parties' stipulation and agreement, and now orders as follows:

## 1.    SCOPE OF ORDER FOR PRESERVATION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

This Order sets forth a protocol for the preservation and production of documents and ESI.

This Order adopts the Parties' agreement regarding the scope of preservation obligations.  It does not expand any document preservation requirements under the

Federal Rules of Civil Procedure and does not limit any protection available under Fed. R. Civ. P. 37(e).

Consistent with these rules, and subject to this Order, each Party shall preserve any Retained Record (as defined below) the Party knows, or reasonably should know, is relevant to the claims or defenses asserted in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

This Order does not address, limit, or determine the relevance, discoverability, or admission into evidence of any Record (as defined below), regardless of whether the Record is required to be preserved pursuant to the terms of this Order.

The Parties (as defined below) do not waive any objections as to the production, discoverability, or confidentiality of documents and ESI preserved under this Order.

## 2.    DEFINITIONS

a.    "Parties" shall mean all named plaintiffs in this action and all named defendants over which the court has exercised personal jurisdiction.

b.    "Records" shall have the same meaning as "documents" as defined in Fed. R. Civ. P. 34(a).  Records shall also include ESI, as contemplated by the Federal Rules of Civil Procedure.

c.    "Retained Records" shall have the same meaning as set forth in paragraph 3(a) of this Order.

d.    "Backup Systems" refers to computer systems used to store electronic information on magnetic tapes or other media to permit data recovery.

e.    "Backup Media" refers to magnetic tapes or other media onto which Backup Systems store such electronic information.

f.    "Preserve" or "Preservation" shall mean taking reasonable and good faith steps consistent with the terms of this Order to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, wiping or theft of Records.

g.    "Cache File" shall mean a copy of data created by a computer system to a temporary location or "cache", which allows frequently-used data to be accessed more quickly by the computer.

h.    "Cookie File" shall mean a file created by web browsers on the user's hard drive which is used to identify the user and the user's preferences when accessing websites.

3

i. "Snapshot" shall mean a mirror image or exact copy of the data on Network Accessible Storage Devices (as defined below), Local Hard Drives (as defined below), or on Backup Media, with all latent data in addition to the files and directory structures.

j. "Network Accessible Storage Device" shall mean any hard drive or other data storage device accessible to multiple users remotely over a computer net work.

k. "Local Hard Drive" shall mean any hard drive or other data storage device attached to or contained within a personal computer (whether a desktop or a laptop) that is used to store electronic data. For purposes of clarification, Local Hard Drive includes external hard drives, portable thumb drives, or similar data storage devices.

l. "Mirror Image" shall mean a bit-by-bit copy of the media.

## 3.    RECORDS REQUIRED TO BE PRESERVED

a. Unless otherwise provided in this Order, Records retained in paper form, and Records stored in electronic form on computer systems, Network Accessible Storage Devices, Local Hard Drives or Backup Systems, at locations or on computer systems, Network Accessible Storage Devices, Local Hard Drives or Backup Systems that a Party knows or reasonably should know contain information potentially relevant to the claims alleged in the complaints, or any

defenses thereto, are subject to Preservation.  Unless otherwise limited by court order or a joint discovery plan or report pursuant to Fed. R. Civ. P. 26 (f), such Records which are potentially relevant to the claims alleged in the complaints, or any defenses thereto, and not otherwise exempted from Preservation by this Order are referred to as "Retained Records" in this Order.

  b.  The Parties shall Preserve any Retained Records in their possession, custody or control during the pendency of this action, including any appeals.

  c.  This Order does not obligate Parties to segregate Retained Records from other Records or Backup Media where they may reside.  This Order does not obligate Parties to Mirror Image any media or to image Retained Records otherwise stored in paper form.  Except as specified in paragraph 3(e)(1), below, this Order does not obligate Parties to retain paper Records if they have been imaged.

  d.  Given the number of Parties and the wide range of approaches used by the Parties to manage, store or retain records (including the management of ESI and the systems used for its recovery in the event of a disaster) it is not practical to attempt to define a single detailed process that all Parties must follow in order to Preserve Retained Records.  Instead, a Party may use any reasonable method to Preserve Retained Records consistent with a Party's record management systems, routine computer operation, ordinary business practices, and the preservation

requirements of this Order. The Parties are required to act in good faith and may not transfer ESI to another form solely for the purpose of increasing the burden of discovery for other Parties.

e.    <u>Retained Records</u>.  The Parties shall preserve Retained Records as follows:

(1)    <u>Paper Records</u>

For draft or original Retained Records (such as draft documents, paper calendars, paper diaries, travel or expense receipts, original photographs, negatives, handwritten notes or Records containing original handwriting) that are stored, archived or permanently kept in draft or original form as a matter of routine practice as hard-copy paper Records, the Parties shall Preserve such draft and original Retained Records. For all other Retained Records maintained in paper form, the Parties shall Preserve at least one copy of all unique Records in paper form or in electronic form, as permitted by paragraph 3(c) above.

(2)    <u>Electronic Mail</u>

For electronic mail Retained Records, the Parties shall preserve at least one copy of all such Retained Records, including those in deleted items folders and any attachments, and, to the extent such information was created and maintained in the normal course of business, the metadata and available header information associated with a particular piece of electronic mail identifying the message's ID,

recipient(s), CC's, BCC's, senders(s), subject or title, reference, the date and time the message was sent, the date and time the message was received and the name, count, size, type, last modified date, last modified time, last author, and native path of associated attachments, if any. The Parties are not required to Preserve any other metadata associated with an electronic mail message, other than those fields identified in Table 1. The Parties are not required to retain multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including the bcc: recipients) can be identified from Retained Records.

> (3)    Other Electronic Records Located on Network Accessible Storage Devices

For Retained Records maintained in electronic form on Network Accessible Storage Devices, and not covered by paragraph 3(e)(2), above, the Parties shall Preserve at least one copy of all such Retained Records and accompanying metadata. Without restricting the freedom to use alternative methods granted by paragraph 3(d), above, the Parties may fulfill their preservation obligations for Retained Records on Network Accessible Storage Devices by Preserving Retained Records and accompanying metadata, or through use of an automatic retention and Preservation system designed and programmed to Preserve Retained Records under the terms of this Order, or by taking reasonable and good faith steps to: (i) identify individuals who possess or control Retained Records saved on Network Accessible Storage Devices, (ii) notify such individuals of their duties to Preserve

Retained Records under the terms of this Order, and (iii) monitor compliance with the preservation requirements of this Order.

### (4)    Other Electronic Records Saved on Local Hard Drives

For Retained Records saved to a Local Hard Drive, the Parties shall take reasonable, good faith steps to preserve such Retained Records and accompanying metadata. Without restricting the freedom to use reasonable alternate methods granted by paragraph 3(d), above, the Parties may fulfill their preservation obligations for Retained Records saved on Local Hard Drives by Preserving Retained Records and accompanying metadata, or by taking reasonable and good faith steps to: (i) identify individuals who possess or control Retained Records saved on Local Hard Drives, (ii) notify such individuals of their duties to Preserve Retained Records under the terms of this Order, and (iii) monitor compliance with the preservation requirements of this Order.

### (5)    Backup Media

The Parties shall preserve Backup Media and the ability to restore data from that media as follows:

(i)    Unless the Parties reach agreement on an earlier date in a joint discovery plan or report pursuant to Fed. R. Civ. P. 26 (f) or the court orders otherwise, monthly Backup Media prepared in the ordinary course of business on or before December 31, 2008 or monthly

Backup Media prepared for purposes of this litigation from daily or other periodic Backup Media Backup Media prepared in the ordinary course of business prior to December 31, 2008, for electronic mail and other Retained Records (exclusive of accounting and other business data governed by paragraph 4(m) of this order) resident on servers, Network Accessible Storage Devices, shared drives or Local Hard Drives shall be Preserved.

(ii)     Unless the Parties reach agreement on an earlier date in a joint discovery plan or report pursuant to Fed. R. Civ. P. 26 (f) or the court orders otherwise, for any Party that does not prepare Backup Media as set forth in 5(i), that Party shall Preserve all Backup Media prepared in the ordinary course of business on or before December 31, 2008 for electronic mail and other Retained Records (exclusive of accounting and other business data governed by paragraph 4(m) of this Order) resident on servers, Network Accessible Storage Devices, shared drives or Local Hard Drives.

## 4.    RECORDS NOT REQUIRED TO BE PRESERVED

Notwithstanding any other provision of this Order, the Parties have no obligation to preserve the following:

a.  <u>Irrelevant Records</u>.  This action arises out of an alleged conspiracy among manufacturers of chocolate candy products to fix, raise, maintain or stabilize prices of those products in the United States as described in the Complaints.  No Party is required to Preserve Records unless the Party knows or reasonably should know those Records contain information potentially relevant to this action or any defenses thereto.

b.  Publicly available information, including the content of commercial databases to which a Party subscribes;

c.  Backup Media other than those described in Paragraph 3(e)(5), above.

d.  Telephone voice mail recorded messages or instant messages not already Preserved and not likely to lead to the discovery of admissible evidence;

e.  Website content, including but not limited to Internet web pages and their iterations not already Preserved;

f.  Intranet and extranet sites not already Preserved and not likely to lead to the discovery of admissible evidence;

g.  Transitory information not otherwise stored as part of normal business practices and not already Preserved, including but not limited to Cookie Files, Cache Files and temporary system files;

h.  Briefs, motions, legal or factual memoranda, notes, or other similar materials created by an attorney, law firm or corporate legal department

10

representing any Party to any case in this proceeding, as well as Records containing or referring to communications between attorneys and the Parties in anticipation of or during the course of any litigation;

      i.     Records created on or before a date to be specified in a joint discovery plan or report pursuant to Fed. R. Civ. P. 26;

      j.     Records created after a date to be specified in a joint discovery plan or report pursuant to Fed. R. Civ. P. 26;

      k.     Identical copies, provided as least one such copy of a Retained Record is preserved in either paper or electronic form in accordance with the terms of this Order and the custodial information is preserved for each identical copy;

      l.     Common system and program files as defined by the NIST library commonly used by e-discovery vendors to exclude system and program files from document review and production; and

      m.     Accounting and other business data maintained on an individual transaction, invoice or purchase order basis, such as data maintained on transaction based systems, regardless of the Party's preservation practices regarding such data in the ordinary course of business, if such data is otherwise maintained in the ordinary course of business consistent with the Preserving Party's regular business practices and routine computer operations and as long as the Preserving Party retains the capability to run a monthly or more frequent report

aggregating such data and using the identical data fields for the entire time period relevant to this action. Subject to the foregoing, no Party is obligated to create periodic backups or periodic reports using individual transaction, invoice or purchase order data for Preservation purposes.

5.    **"SAFE HARBOR" FOR LOSS, DESTRUCTION OR MODIFICATION OF ELECTRONICALLY-STORED INFORMATION DUE TO ROUTINE, GOOD FAITH OPERATIONS**

The Parties agree to be bound by the "safe harbor" provision of Fed. R. Civ. P. 37(e) and the Advisory Committee Notes to that Rule. Consistent with these authorities, a Party shall not be in violation of this Order if, despite the Party's good faith efforts to comply with the Preservation requirements of this Order, Retained Records maintained by the Party in electronic form are altered lost, overwritten or destroyed as a result of the Party's routine, good faith operation of its information or computer system(s). This includes, but is not limited to:

a.    Good faith upgrading, loading, reprogramming, customizing, or migrating software or hardware;

b.    Good faith inputting, accessing, updating, or modifying data in an accounting or other business database maintained on an individual transaction, invoice or purchase order basis in an accounting or other business database, provided the preservation requirements of paragraph 4(m), above, are satisfied; and

c.      Good Faith editing, modifying, or removal of an Internet site.

## 6.      IMPLEMENTATION AND MODIFICATION OF ORDER

a.      The court recognizes that the Parties may need 90 days to fully implement preservation systems and procedures such as those in this Order and Case Management Order No. 1. The Parties will continue to use reasonable good faith efforts to Preserve Retained Records consistent with the obligations of Case Management Order No. 1 as modified by this Order.

b.      The Parties shall undertake reasonable, good faith efforts to Preserve Retained Records under the terms of this Order, and shall communicate the existence and substance of this Order to those persons or employees responsible for carrying out the Parties' obligations hereunder as well as persons or employees likely to possess Records required to be preserved, and shall maintain a record of all persons or employees to whom the existence and substance of this Order has been communicated. Such communication may be accomplished by either an e-mail or paper memorandum.

c.      Notwithstanding a Party's obligations to preserve Retained Records in accordance with this Order, a Party must send written notice to opposing counsel of its intention to take action pursuant to routine policies and programs or as a result of other circumstances that would result in Retained Records being destroyed, lost or otherwise altered. Service of notice of such intention must be

provided to the respective Opposing Counsel. Such notice shall include a detailed description of the Retained Records that would be affected. If within 30 days after receiving such written notice Opposing Counsel does not indicate in writing any objection, then the notified Party shall be deemed to have agreed to such destruction or alteration.

d.     The Parties are directed to confer to resolve questions as to what specific Records are required to be preserved under this Order. Counsel for the Parties may stipulate and agree in writing, including but not limited to a written report under Fed. R. Civ. P. 26(f), that specific Records need or need not be preserved under this Order.

e.     In the event that any Party's data management systems are such as to make any term of this Order unreasonably burdensome or impossible for that Party to comply with, Counsel for that Party and opposing counsel may negotiate and agree to any reasonable exception to or modification of this Order. If such negotiation does not lead to an agreed-upon modification, the Party may apply to this court for an exception to or modification of this Order.

f.     If the Parties are unable to agree as to what Records: (1) are outside the scope of this Order, (2) may be destroyed, lost or otherwise altered pursuant to routine policies and programs, or (3) otherwise need not be preserved, any Party

may apply to the court for clarification or relief from this Order upon reasonable notice.

## 7.    PROCESSING OF NON-PARTY DOCUMENTS

a.    This Order will cover joint processing of non-party documents and specifications for productions of third-party documents.

b.    Unless otherwise agreed among the parties, the party that first issues a non-party subpoena (the "First Party") will be responsible for: (1) taking reasonable steps to negotiate that the non-party's production are processed in accordance with the specifications in this Order; (2)  if necessary, engaging a vendor to process the non-party production in accordance with the specifications in this Order; (3) distributing non-party productions within twenty (20) business days of receiving the production (or as soon thereafter as practicable) to all Parties at the addresses listed in their respective signature block to this Order.

c.    If a non-party production is not Bates-stamped, the First Party will provide unique prefixes and Bates numbers to the service provider and will notify all Parties of the prefix, Bates range, and production.

d.    To the extent that a non-party is making an identical production in response to multiple subpoenas, to the extent practicable, that non-party shall be instructed by the Parties to this litigation to make that one production to the First

15

Party. After receipt of the production, the First Party shall undertake reasonable efforts to comply with the provisions of section 7(b), above.

e.     If a non-party is making distinct productions in response to multiple subpoenas, that non-party will be instructed to make each distinct production to the Party issuing the subpoena. The Party in receipt of such distinct production shall undertake reasonable efforts to comply with the provisions of section 7(b), above.

## 8.     PRODUCTION FORMAT AND SCOPE

a.     The Federal Rules of Civil Procedure will govern the costs of discovery.

b.     Documents gathered from electronic data should be provided in the following format:

1.     TIFFs. For all documents, except Excel files, Single-page Group IV TIFFs should be provided in at least 300 dpi format.

2.     Native Format. With respect to all electronic documents, the parties agree that only Excel files will be produced in native format. Excel files and documents will be produced with a full path to the native document from the "NATIVEPATH" field set forth in Table I. Bates-numbered slip sheets shall also be provided. However, all parties agree that if a producing party converts Excel files into TIFFs or other similar format for its own purposes, then both the native file and the converted Excel files will be produced. The Parties agree that all rights

are reserved under Fed. R. Civ. P. 34(b)(1)(C) to make reasonable requests that specified ESI <u>other</u> than Excel files be produced in native format.

3.    <u>Text Files</u>. For each document a text file should be provided. Each text file should bear the name of the beginning page of each document. To the extent possible, the text of native files should be extracted directly from the native files, except that for a text file corresponding to a redacted document the text may be extracted from OCR of the redacted TIFF file (instead of the native document).

4.    <u>Unique IDs</u>. Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page.

5.    <u>Metadata Fields</u>. All metadata fields set forth in Table I should be provided, if they exist. Metadata pertaining to date/time should be maintained in the time zone in which the metadata was originally created or maintained. To the extent it can be determined, documents should also be produced with a data field standardizing the document's date and time in GMT.

6.    <u>Database Load Files and Cross Reference Files</u>. Documents should be provided with a Concordance (e.g., .dat)-delimited file and an Opticon-delimited file. Every TIFF in each production must be referenced in the corresponding Load File. The total number of TIFF files referenced in a Load File

within the production should match the total number of image files in the production.

       7.    <u>File Formats</u>

       a.    <u>Opticon Delimited File</u>

PROD00000001,20081123,IMAGES\001\PROD00000001.TIF,Y,,,60

       b.    Concordance Delimited File

þBEGDOCþ  þENDDOCþ  þBEGATTþ  þENDATTþ  þPAGESþ

       c.    Documents gathered from hard copy documents may be provided in the manner in which they were kept in the ordinary course of business. The Parties agree, however, that if a Party intends to produce hard copy documents in hard copy form, the producing Party will provide opposing counsel with reasonable notice regarding the nature and estimated length (in individual pages) of said hard copy production. Nevertheless, if the Producing Party converts hard copy documents into electronic form for its own purposes or the Requesting Party agrees to pay for conversion of the hard copy documents to electronic form, those hard copy documents converted to electronic form shall be produced in the following format:

       1.    <u>TIFFs</u>. Single-page Group IV TIFFs should be provided, in at least 300 dpi format.

2.    <u>Unique IDs</u>.  Each document should have a unique identifier, which correlates with the Bates number of the first page.

3.    <u>OCR Text Files</u>. Multi-page OCR files with page breaks should be provided as a separate text file for each document. The file name itself should match the beginning Bates number of each document.  The total number of OCR text files should match the total number of documents.  OCR text files should be provided in a separate folder from their corresponding TIFF images (e.g., not as a field with the Concordance-delimited file).  The text files will not contain redacted portions of the documents. For native files that are images of text documents (e.g., PDF and TIFF) and do not contain extractable text, the Parties agree to perform manual OCR on these documents to deliver searchable text to the extent it exists.

4.    <u>Database Load Files</u>.  Documents should be provided with a Concordance-delimited data file and an Opticon-delimited file as detailed above.  Each TIFF in a production must be referenced in the corresponding Load File.  The total number of documents or pages referenced within a Load File in a production must match the total number of TIFF files in the production.

d.    <u>Bates numbering</u>.  Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party.  Bates numbering must be sequential. The Parties agree to use placeholders (e.g., "intentionally left blank" pages), rather than skipping Bates numbers in productions.

e.    <u>Unitizing of Documents</u>.   In scanning paper documents, multiple documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The parties will make their best efforts to have their service providers unitize documents correctly and will commit to address situations where there are improperly unitized documents.

f.    <u>Parent-Child Relationships</u>.    Parent-child relationships (the association between an attachment and its parent document) should be preserved. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s).

g.    <u>Objective Coding Fields</u>.  For hard copy documents, the following objective coding fields should be provided to the extent practicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning Attachment number; (4) ending Attachment number; (5) Page Count; and (6) source/custodian.

h.    <u>Objective Coding/Metadata Format</u>.   The objective coding and or/electronic file metadata gathered during the electronic discovery conversion process should be provided in the following format:  (1) the field should be delimited by the default Concordance field delimiter for ANSI character 20;  (2) string values within the field should be enclosed with a text delimiter (þ); (3) the

first line of the Concordance-delimited file should contain objective coding and/or electronic file metadata headers and below the first line there should be exactly one line for each document; (4) each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row; and (5) multiple values in fielded data should be separated by a semicolon (;).

i.    Audio files or Voice Mail. Audio files, including voice mail, should be produced in the native audio format in which the files were maintained in the ordinary course of business. If the audio files are maintained in a non-standard format, they should be produced in MP3 format.

j.    Documents Processed Prior to Protocol Approval. Documents processed prior to the approval of this protocol may be exchanged as previously processed.

9.    **MISCELLANEOUS**

a.    Additional Parties. Any Party named, served and appearing in this action after the date this Order is entered shall be bound by its terms, effective once the Order has been served upon such Party, unless the Court orders otherwise on good cause shown. Any Party who causes another Party to be added to this action after the entry of this Order shall serve that new Party with a copy of this Order and any subsequent amendments to it at the time it serves its pleading and summons.

b.     <u>Further Amendment</u>.  Except as otherwise provided in this Order, its

terms may be amended only by written stipulation of the Parties or by order of the

Court, on noticed motion, for good cause shown.

IT IS SO STIPULATED AND ORDERED.

Dated:  January 26, 2009                           Respectfully submitted,

                                                   /s/ Walter W. Cohen
                                                   Walter W. Cohen
                                                   **OBERMAYER REBMANN**
                                                   **MAXWELL & HIPPEL LLP**
                                                   200 Locust Street, Suite 400
                                                   Harrisburg, PA 17101
                                                   (717) 234-9730

*Local Counsel for the Direct Purchaser Plaintiffs*


/s/ H. Laddie Montague, Jr.                         /s/ Michael D. Hausfeld
H. Laddie Montague, Jr.                             Michael D. Hausfeld
Ruthanne Gordon                                     Robert G. Eisler
**BERGER & MONTAGUE, P.C.**                         **HAUSFELD L.L.P.**
1622 Locust Street                                  1146 19th Street, N.W.
Philadelphia, PA  19103                             Washington, DC  20036
(215) 875-3000                                      (202) 576-1089


*Lead Counsel for Direct Purchaser Plaintiffs*

*/s/ Roman M. Silberfeld*
Roman M. Silberfeld
Bernice Conn
**ROBINS, KAPLAN, MILLER**
**& CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
(310) 552-0130

*/s/ Steven R. Maher*
Steven R. Maher
**THE MAHER LAW FIRM**
631 West Morse Boulevard
Suite 200
Winter Park, FL  32789
(407) 839-0866

*/s/ Joseph U. Metz*
Joseph U. Metz
**DILWORTH PAXSON LLP**
112 Market Street, Suite 800
Harrisburg, PA  17101
(717) 236-4812

*Lead Counsel for the Indirect Business Purchaser Plaintiffs*

*/s/ Christopher Lovell*
Christopher Lovell
Peggy L. Wedgworth
**LOVELL STEWART**
**HALEBIAN LLP**
500 Fifth Avenue, Floor 58
New York, NY 10110
(212) 608-1900

*/s/ Steven F. Benz*
Steven F. Benz
**KELLOGG, HUBER,**
**HANSEN, TODD, EVANS**
**& FIGEL, P.L.L.C.**
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC  20036
(202) 326-7929

*Lead Counsel for the Indirect End User Plaintiffs*

*/s/ Steve D. Shadowen*
Steve D. Shadowen
Joseph T. Lukens
**HANGLEY ARONCHICK SEGAL**
**& PUDLIN**
30 North Third Street, Suite 700
Harrisburg, PA  17101
(717) 364-1032

*Liaison Counsel for the Individual Plaintiffs*

_/s/ David E. Lehman_
David E. Lehman
Alan R. Boynton, Jr.
Kimberly M. Colonna
**MCNEES WALLACE**
 **& NURICK LLC**
100 Pine Street, P.O. Box 1166
Harrisburg, PA  17108
(717) 232-8000

_/s/ Michael A. Finio_
Michael A. Finio
**SAUL EWING LLP**
PNI Plaza, 2nd Floor
2 North Second Street
Harrisburg, PA  17101
(717) 238-7671

_/s/ Peter E. Moll_
Peter E. Moll
Roxann E. Henry
**HOWREY LLP**
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 383-6503

                    _Counsel for Nestlé U.S.A., Inc._

_/s/ Thomas D. Yannucci_
Thomas D. Yannucci
Craig S. Primis
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000


        _Counsel for The Hershey Company and Hershey Canada, Inc._

_/s/ Thomas S. Brown_
Thomas S. Brown
Frederick E. Blakelock
**GIBBONS P.C.**
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
(215) 446-6231

_/s/ David Marx, Jr._
David Marx, Jr.
**MCDERMOTT WILL**
**& EMERY LLP**
227 West Monroe Street
Suite 400
Chicago, IL 60606
(312) 984-7668

_/s/ Stefan M. Meisner_
Stefan M. Meisner
Nicole L. Castle
**MCDERMOTT WILL**
**& EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8000

_Counsel for Mars, Inc., Mars Snackfood U.S. LLC, and_
_Mars Canada, Inc._

_/s/ Bridget E. Montgomery_
Bridget E. Montgomery
**ECKERT SEAMANS CHERIN**
**& MELLOTT, LLC**
213 Market Street, 8th Floor
Harrisburg, PA 17101
(717) 237-6054

_/s/ Dennis P. Orr_
Dennis P. Orr
Thomas M. Mueller
**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8161

_Counsel for Cadbury Holdings Ltd., Cadbury plc, and_
_Cadbury Adams Canada, Inc._

**So Ordered:**

_____
CHRISTOPHER C. CONNER
United States District Judge

### TABLE I

### METADATA FIELDS

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document.. |
| EndAttach | Unique ID(Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last | The Document ID number associated with the last page of the last attachment to a |

**TABLE I**

| | | | attachment to a parent email.. | parent document. |
|---|---|---|---|---|
| Doc Pages | Pages | Paragraph | The number of pages for an email.. | The number of pages for a document. |
| Record Type | | Paragraph | The record type of a document (e.g., e-mail). | The record type of a document (e.g., attachment, e-file, etc.) |
| Master_Date | | Date (MM/DD/YYYY Format) | The Date_Sent of a parent email (EDT). | The Date-Modified for attachments and loose documents (EDT). |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| | | | | |

### TABLE I

| CC | CC | Paragraph | Combine CC and CC_Email field into one CC field. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of a document. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| OriginalSource | Original Name | Paragraph | The file name of an e-mail store (e.g., Outlook.pst, MyMail.nsf, etc.). | |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| NativePath | | Paragraph | The full path to a native copy of an email. | The full path to a native copy of a document. |
| | | | | |

**TABLE I**

| AttachCount | Numbered Attachments | Paragraph | The number of attachments to an email. | The number of attachments to a document. |
|---|---|---|---|---|
| FileExt | File Extension | Paragraph | The file extension of an email. | The file extension of a document. |
| FileName | Original Name | Paragraph | The file name of an email record. | The file name of a document. |
| FileType | File Type | Paragraph | The file type of an email. | The file type of a document. |
| FileSize | File Size | Paragraph | The file size of an email (including embedded attachments). | The file size of a document (including embedded attachments). |
| Application | Application Name | Paragraph | The type of application for an email file (e.g., Outlook, Lotus Notes, etc.). | The application type of a document (e.g., Microsoft Excel, Word, etc.). |
|  |  |  |  |  |

4

## TABLE I

| FullText | Text | Paragraph | The extracted full text of an email. | The extracted full text or OCR of a document. |
|---|---|---|---|---|
| LastModDate | LastModDate | Date | The date sent of an email. | The last modified date of a file. |
| LastModTime | LastModTime | Paragraph | The time sent of an email. | The last modified time of a file. |
| LastModAuthor | LastModAuthor | Paragraph | The display name of the author or sender of an email. | The name of the person who last modified a file. |
| ParentFolder | ParentFolder | Paragraph | The name of the parent folder of an email. | The name of the parent folder of a file. |
| AttachCount | Attach_Cnt | Numeric | The number of attachments to an email. | The number of attachments to an email. |
| Fingerprint | Hash | Paragraph | The algorithm that represents a unique value; the digital fingerprint of an email. | The algorithm that represents a unique value; the digital fingerprint of a file. |

## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION** | : **MDL DOCKET NO. 1935**<br>: **(Civil Action No. 1:08-MDL-1935**<br>:<br>: **(Judge Conner)**<br>: |
| **THIS DOCUMENT APPLIES TO: ALL CASES** | : **JOINT STIPULATION**<br>: **REGARDING AN EXCEPTION TO**<br>: **THE STIPULATION FOR THE**<br>: **PRESERVATION AND**<br>: **PRODUCTION OF DOCUMENTS**<br>: **AND ELECTRONICALLY STORED**<br>: **INFORMATION** |

Pursuant to Paragraph 6(d) and (e) of the Stipulation for the Preservation and Production of Documents and Electronically Stored Information (the "Preservation and Production Stipulation"), the Parties (as defined below) stipulate and agree to an exception to the original Preservation and Production Stipulation as follows:

1.     Nestlé U.S.A., Inc., Nestlé S.A., and Nestlé Canada Inc. each separately represent through persons knowledgeable that they have preserved Retained Records (as defined in the original Preservation and Production Stipulation) using one or more of the methods agreed to in Paragraph 3 of the Preservation and Production Stipulation.

Case 1:08-mdl-01935-CCC     Document 574     Filed 01/26/2009     Page 2 of 6

2.      Nestlé U.S.A., Inc., Nestlé S.A., and Nestlé Canada Inc., each separately represent through persons knowledgeable that they utilize Tivoli Storage Manager Backup Systems located in Phoenix, Arizona; Bussigny, Switzerland; and Frankfurt, Germany.     These systems are used to backup electronic mail, transactional data, and non-transactional server data to thousands of backup tapes.

3.      Nestlé U.S.A., Inc., Nestlé S.A., and Nestlé Canada Inc., each separately represent through persons knowledgeable that the Tivoli backups of non-transactional server data are scheduled to retain one to three months of each system's backup cycle, and are striped across numerous backup tapes in a way that would be costly to preserve, restore or search.

4.      Nestlé U.S.A., Inc., Nestlé S.A., and Nestlé Canada Inc., each separately represent through persons knowledgeable that the preservation of non-transactional server data backup data saved using Tivoli Storage Manager as described in Paragraph 3, would pose a significant burden and, given their use of one or more of the methods agreed to in Paragraph 3 of the Preservation and Production Stipulation, Nestlé U.S.A., Inc., Nestlé S.A., and Nestlé Canada Inc. have not undertaken the separate preservation of these backup tapes.

5.      In light of the foregoing representations, the Parties stipulate that the Tivoli backup-systems and media identified in Paragraph 2 are exempt from the back-up media preservation requirements of paragraph 3.e(5) of the Preservation

2

and Production Stipulation, except as to electronic mail Retained Records which

have been preserved in accord with the original Preservation and Production

Stipulation.

   IT IS SO STIPULATED AND ORDERED.

Dated:  January __, 2009                     Respectfully submitted,

                                             /s/ Walter W. Cohen          __
                                             Walter W. Cohen
                                             **OBERMAYER REBMANN**
                                             **MAXWELL & HIPPEL LLP**
                                             200 Locust Street, Suite 400
                                             Harrisburg, PA 17101
                                             (717) 234-9730

            *Local Counsel for the Direct Purchaser Plaintiffs*


/s/ H. Laddie Montague, Jr.                   /s/ Michael D. Hausfeld
H. Laddie Montague, Jr.                       Michael D. Hausfeld
Ruthanne Gordon                               Robert G. Eisler
**BERGER & MONTAGUE, P.C.**                   **HAUSFELD L.L.P.**
1622 Locust Street                            1146 19th Street, N.W.
Philadelphia, PA  19103                       Washington, DC  20036
(215) 875-3000                                (202) 576-1089


            *Lead Counsel for Direct Purchaser Plaintiffs*

/s/ Roman M. Silberfeld
Roman M. Silberfeld
Bernice Conn
**ROBINS, KAPLAN, MILLER
& CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
(310) 552-0130

/s/ Joseph U. Metz
Joseph U. Metz
**DILWORTH PAXSON LLP**
112 Market Street, Suite 800
Harrisburg, PA  17101
(717) 236-4812

/s/ Steven R. Maher
Steven R. Maher
**THE MAHER LAW FIRM**
631 West Morse Boulevard
Suite 200
Winter Park, FL  32789
(407) 839-0866

*Lead Counsel for the Indirect Business Purchaser Plaintiffs*

/s/ Christopher Lovell
Christopher Lovell
Peggy L. Wedgworth
**LOVELL STEWART
HALEBIAN LLP**
500 Fifth Avenue, Floor 58
New York, NY 10110
(212) 608-1900

/s/ Steven F. Benz
Steven F. Benz
**KELLOGG, HUBER,
HANSEN, TODD, EVANS
& FIGEL, P.L.L.C.**
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC  20036
(202) 326-7929

*Lead Counsel for the Indirect End User Plaintiffs*

/s/ Steve D. Shadowen
Steve D. Shadowen
Joseph T. Lukens
**HANGLEY ARONCHICK SEGAL
& PUDLIN**
30 North Third Street, Suite 700
Harrisburg, PA  17101
(717) 364-1032

*Liaison Counsel for the Individual Plaintiffs*

4

/s/ David E. Lehman
David E. Lehman
Alan R. Boynton, Jr.
Kimberly M. Colonna
**MCNEES WALLACE
 & NURICK LLC**
100 Pine Street, P.O. Box 1166
Harrisburg, PA  17108
(717) 232-8000

/s/ Michael A. Finio
Michael A. Finio
**SAUL EWING LLP**
PNI Plaza, 2nd Floor
2 North Second Street
Harrisburg, PA  17101
(717) 238-7671

/s/ Peter E. Moll
Peter E. Moll
Roxann E. Henry
**HOWREY LLP**
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 383-6503

*Counsel for Nestlé U.S.A., Inc.,
and for special appearance for Nestle S.A. and Nestle Canada Inc.*

/s/ Thomas D. Yannucci
Thomas D. Yannucci
Craig S. Primis
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

*Counsel for The Hershey Company and Hershey Canada, Inc.*

/s/ Thomas S. Brown
Thomas S. Brown
Frederick E. Blakelock
**GIBBONS P.C.**
1700 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
(215) 446-6231

/s/ Stefan M. Meisner
Stefan M. Meisner
Nicole L. Castle
**MCDERMOTT WILL
 & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8000

/s/ David Marx, Jr.
David Marx, Jr.
**MCDERMOTT WILL
 & EMERY LLP**
227 West Monroe Street
Suite 400
Chicago, IL 60606
(312) 984-7668

*Counsel for Mars, Inc., Mars Snackfood U.S. LLC, and
Mars Canada, Inc.*

/s/ Bridget E. Montgomery
Bridget E. Montgomery
**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**
213 Market Street, 8th Floor
Harrisburg, PA 17101
(717) 237-6054

/s/ Dennis P. Orr
Dennis P. Orr
Thomas M. Mueller
**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8161

*Counsel for Cadbury Holdings Ltd., Cadbury plc, and
Cadbury Adams Canada, Inc.*